## AMENDED STATEMENT OF FACTS

In or around July 17, 2013, agents from the Federal Bureau of Investigation ("FBI") were made aware that an inmate ("Inmate #1") housed at the D.C. Department of Corrections ("DOC"), Correctional Treatment Facility ("CTF") located at 1901 E Street, S.E., in Washington, D.C., was conspiring with correctional officers to smuggle narcotics and other contraband into CTF.

In or around October 2013, after being confronted by law enforcement, Inmate #1 admitted to his smuggling activities.  On or about November 1, 2013, your affiant interviewed Inmate #1. Inmate #1 admitted that Inmate #1 had worked with two different correctional officers who worked at CTF – correctional officer #1 ("CO1"), later identified as defendant Darren Yome Malry (the "defendant," or "defendant Malry"), and correctional officer #2 ("CO2") to smuggle narcotics and other contraband into CTF.  Inmate #1 made payments to defendant Malry in exchange for Malry's agreement to smuggle narcotics and other contraband into CTF for further distribution by Inmate #1 to other inmates housed at CTF.  Independent of the agreement and transactions between defendant Malry and Inmate #1, Inmate #1 made payments to CO2 in exchange for CO2's agreement to smuggle narcotics and other contraband into CTF for further distribution by Inmate #1 to other inmates housed at CTF.

At all times relevant to this Statement of Facts, defendant Malry was working as a correctional officer at CTF for the Corrections Corporation of America ("CCA").  CCA contracts with the D.C. DOC to operate and manage CTF.   At all times relevant to this Statement of Facts, defendant Malry was a "public official," in that defendant Malry was an employee of CCA acting for or on behalf of the District of Columbia Department of Corrections.

According to Inmate #1, Inmate #1 had contacts outside of CTF who would meet with defendant Malry.  During these meetings, Inmate #1's contacts provided the contraband to be smuggled into CTF to defendant Malry, and made cash payments of various amounts (depending on the type of contraband and the amount of contraband to be smuggled into CTF) to defendant Malry.  After defendant Malry received the contraband and cash payment, defendant Malry would hide the contraband on his person, enter CTF with the contraband, and eventually provide the contraband to Inmate #1 in Inmate #1's jail cell.

In or around January 2014, FBI agents were made aware that another inmate who was also housed at CTF ("Inmate #2") was also conspiring with defendant Malry to smuggle narcotics and other contraband into CTF.  In or around February 2014, after being confronted by law enforcement, Inmate #2 admitted to smuggling narcotics and contraband into CTF.  Inmate #2 told law enforcement that the name of the corrections officer who was smuggling the items in for Inmate #2 was "Malry."  Inmate #2 explained to law enforcement that Inmate #2 had contacts outside of CTF who would meet defendant Malry and provide the contraband as well as cash payments in exchange for Malry's agreement to smuggle the contraband into CTF for delivery to Inmate #2.

On or about Friday, March 7, 2014, your affiant met with Inmate #2, who agreed to cooperate with the FBI in an attempt to complete a controlled undercover transaction between

Inmate #2 and defendant Malry through an undercover agent from the FBI ("UC").  Inmate #1 was provided with the UC's cell phone number, and was instructed to provide that telephone number to defendant Malry.

On or about Sunday, March 9, 2014, Inmate #2 provided defendant Malry the UC's cell phone number and instructed defendant Malry that defendant Malry should contact the UC to set up a meeting with the UC for the purpose of obtaining the contraband to smuggle into CTF for Inmate #2.

On or about Sunday, March 9, 2014, the UC received a telephone call at approximately 7:42 p.m. on the UC's cell phone number – the same phone number that Inmate #2 had been given by FBI, and that Inmate #2 had passed along to defendant Malry.  The call came from telephone number XXX-XXX-3125.  Telephone records for XXX-XXX-3125 confirmed that this telephone number has a registered user "Darren Malry."  The caller left the following voice mail message for the UC: "Hey, [UC's first name], this is, uh, D.  I was calling for [Inmate #2's first name].  Give me a call back at your earliest convenience.  Thanks."  Subsequently, the UC exchanged several text messages with XXX-XXX-3125, for the purpose of arranging a meeting on Tuesday, March 11, 2014 at approximately 3:00 p.m. in the parking lot of the Chevy's restaurant located at 7511 Greenbelt Road in Greenbelt, Maryland.

On or about Tuesday, March 11, 2014, FBI agents prepared items for the UC to deliver to defendant Malry, including the following:

- $750 in U.S. currency

- A Samsung cellular telephone, Model # SPH-M830 UD.  This phone contained the following additional identifying information:

    - FCC ID: A3LSPHM830

    - DEC 268 436 462 910 769 121

    - HEX A00 000 45A 452 E1

- A Samsung battery, with the following identifying information:

    - E B 494865VO 1750mAh

    - S/N AA1DA205S/S-B

- A Samsung charger and USB cable, 5V 1.0A

- Three packs of Newport 100 cigarettes with side label FSC 0 265731 8, bottom label 16718 4L03 9401923; and

- Four packs of Big Bambu cigarette paper sheets.

On or about Tuesday, March 11, 2014 at approximately 3:00 p.m., the UC parked in a vehicle in the parking lot of the Chevy's restaurant located at 7511 Greenbelt Road in Greenbelt, Maryland. The UC was wearing an audio recording device. Other FBI agents were in the area with video cameras recording the meeting. At approximately 3:20 p.m., defendant Malry drove up to the UC's vehicle and engaged in a recorded conversation with the UC. The UC confirmed that the exchange included a payment to Malry of $750. The UC handed defendant Malry a plastic bag which contained the contraband identified above: $750 in U.S. currency; the Samsung cellular phone, with battery; the Samsung charger and USB cable, three packs of cigarettes, and four packs of bamboo sheet rolling papers.

On or about Wednesday, March 12, 2014 at approximately 6:00 a.m., defendant Malry entered Inmate #2's cell at CTF and gave Inmate #2 a cellular phone, USB cord, and charger. Defendant Malry did not say anything to Inmate #2. On or about Thursday, March 13, 2014 at approximately 6:00 a.m., defendant Malry entered Inmate #2's cell at CTF and gave Inmate #2 some tobacco and rolling papers. Later that day, on or about Thursday, March 13, 2014, FBI agents recovered from Inmate #2 a cellular telephone, USB cord, cell phone charger, tobacco, and rolling papers.

The cell phone that was recovered was a Samsung cellular telephone, Model # SPH-M830 UD, and contained identifying information: FCC ID: A3LSPHM830; DEC 268 436 462 910 769 121; HEX A00 000 45A 452 E1 – that is, the same identifying information as the cell phone provided by the UC to defendant Malry on March 11, 2014.

On or about Friday, April 11, 2014, Inmate #2 was shown a confirmation photo of defendant Malry. When Inmate #2 saw the photo, Inmate #2 confirmed that the individual in the photo was the individual Inmate #2 knew as "Officer Malry"; that the individual in the photo was the same person who had smuggled narcotics and other contraband for Inmate #2 into CTF; and that the individual in the photo was the same individual who provided Inmate #2 with a cellular phone (Samsung cellular telephone, Model # SPH-M830 UD, and contained identifying information: FCC ID: A3LSPHM830; DEC 268 436 462 910 769 121; HEX A00 000 45A 452 E1), USB cord, and charger on March 12, 2014, and tobacco and rolling papers on March 13, 2014. With the exception of Malry's days off, Inmate #2 saw defendant Malry on almost a daily basis for at least the past six months.

On or about Saturday, April 12, 2014, Inmate #2 indicated to defendant Malry that the UC was prepared to make another transaction with defendant Malry, and that the UC contact defendant Malry to set up a another meeting.

On or about Saturday, April 19, 2014, the UC contacted defendant Malry by telephone. The UC and Malry agreed to meet on Monday, April 21, 2014 at 9:00 a.m. at the International House of Pancakes ("IHOP") restaurant located at 7405 Greenbelt Road in Greenbelt, Maryland. The IHOP is located in the same shopping center where defendant Malry met with the UC on

Tuesday, March 11, 2014.

On Monday, April 21, 2014 at approximately 9:15 a.m., the UC met with defendant Malry inside the IHOP restaurant. The UC gave defendant Malry $600 in pre-identified U.S. currency; 2 pre-marked packages of Marlboro Light cigarettes; 2 pre-marked packages of Newport cigarettes; and 4 separate Saran-wrapped packages of oregano totaling one-half ounce, which packages were designed to be disguised as marijuana. Defendant Malry and the UC had breakfast, which defendant Malry paid for using a portion of the $600 in pre-identified U.S. currency. After the transaction was made and after eating, the UC and defendant walked outside into the parking lot, at which time FBI agents arrested defendant Malry and the UC. FBI agents recovered from defendant Malry the 2 pre-marked packages of Marlboro Light cigarettes; the 2 pre-marked packages of Newport cigarettes; the 4 separate Saran-wrapped packages of oregano totaling one-half ounce; and $567.26 in U.S. currency, of which $560 matched the pre-identified currency that the UC gave to Malry.

At all times relevant to this Statement of Facts, defendant Malry corruptly demanded and received the moneys described above from the UC and other individuals in return for defendant Malry being induced to act in violation of defendant Malry's official duties as a correctional officer at CTF – that is, maintaining the safety and security of CTF, including the enforcement of of the unlawful transport and distribution of narcotics and other contraband into and within CTF.

I declare that the following is true and correct.

_____
Special Agent Claro R. Miranda
Federal Bureau of Investigation

Subscribed and sworn to before me this 22nd day of April, 2014, at the District of Columbia.

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE